John **BEISER**, Appellant,

v.

**TOMBALL HOSPITAL AUTHORITY**
d/b/a Tomball Regional Hospital,
Appellee.

No. 01–94–00223–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 29, 1995.

Rehearing Overruled July 27, 1995.

Dennis G. Herlong, Houston, for appellant.

Thomas H. Wilson, Houston, Anne M. Pike, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and WILSON and ANDELL, JJ.

## OPINION ON MOTION
## FOR REHEARING

ANDELL, Justice.

Appellee Tomball Hospital Authority d/b/a Tomball Regional Hospital (TRH), moves the Court to rehear appellant, John Beiser's appeal. We overrule the motion for rehearing, but substitute the following opinion in place of our initial one.

This appeal arises from a take-nothing summary judgment against Mr. Beiser in his suit against TRH in which he alleged violations of the Texas Whistleblower Act,[1] as well as the intentional infliction of emotional distress upon termination of his at-will employment.

### Factual Background

When reviewing a summary judgment, we take as true the evidence favorable to the non-movant, and in its favor resolve any doubts, as well as indulge every reasonable inference. *MMP, Ltd. v. Jones*, 710 S.W.2d

---

1. Former TEX.REV.CIV.STAT.ANN. art. 6252–16a (Vernon Supp.1993), Act of June 19, 1983, 68th Leg., R.S., ch. 832, Tex.Gen.Laws 4751, *amended by* Act of June 16, 1989, 71st Leg., R.S., ch. 1222, sec. 1, Tex.Gen.Laws 4943, *repealed by* Act of May 22, 1993, 73rd Leg., R.S., ch. 268, sec. 46(1), Tex.Gen.Laws 583, 986, *now codified by* Act of May 22, 1993, 73rd Leg., R.S., ch. 268, sec. 1, Tex.Gen.Laws 583, 610 at TEX. GOV'T CODE ANN. § 554.003, 554.005, 554.006 (Vernon Pamph.1994), hereafter referred to as "whistleblower statute" or "the statute."

59, 60 (Tex.1986). Viewed in this light, the summary judgment record shows the following. Mr. Beiser, a 55–year old lab technician, in his suit against TRH, asserted that he discovered on November 11, 1992, that TRH was storing patient blood samples and donor units of blood in violation of regulations promulgated by the Federal Food and Drug Administration (FDA). Mr. Beiser reported the improper storage to his supervisor, Valerie Foley, and urged her to report the potential contamination of the blood units to the appropriate authorities.

When reprimanded for a different matter on March 29, 1993, Mr. Beiser informed Foley that he had reported the improper blood storage to the FDA. On March 31, 1993, in a meeting with Foley, Judy Weir, TRH's director of human resources, and Dr. Watson, laboratory director, TRH terminated Mr. Beiser's employment. He was given a four-page memo saying why he was fired and telling him to call Tom Nealon, TRH's executive vice-president, the next day. Although Mr. Beiser called Mr. Nealon the next day, Mr. Nealon did not return his phone call.

On June 29, 1993, through his counsel, Mr. Beiser notified TRH that his termination violated the whistleblower statute, that he invoked TRH's grievance procedure, and that TRH had 30 days during which to conclude any such procedures, after which he would file suit. In a letter dated July 19, 1993, TRH's attorney responded by inviting appellant to make use of the hospital's grievance procedure.

Mr. Beiser's counsel responded to TRH's letter with a letter dated July 23, 1993. It noted that TRH had waited three weeks to respond to Mr. Beiser's June 29th letter. It stated that the one-page "Grievance Procedure" attached to the July 23 letter, by its own terms, applied only to current employees. The letter stated that Mr. Beiser had already met the steps of the grievance procedure in the meeting culminating in his termination by meeting with Foley, Weir, and Dr. Watson, but that if TRH really thought that he had not complied with the grievance procedure, to immediately set up a meeting between TRH, its attorney, himself, and his attorney. The letter asked that since TRH was inviting Mr. Beiser to go through the grievance procedure again, that TRH give a written agreement that Mr. Beiser had not waived his right to pursue the grievance and that Mr. Beiser's delay in filing suit to allow time to follow the grievance procedure would toll the statute of limitations until the procedure was concluded.

TRH responded by letter, dated July 28, 1993, inquiring about the possibility of a meeting between Mr. Beiser and his counsel and TRH's counsel and Foley on July 30, 1993, as a first step in Mr. Beiser's post-termination grievance process.

Mr. Beiser filed suit against TRH on July 29, 1993, the 120th day after he was terminated.

TRH requested summary judgment on Mr. Beiser's whistleblower claim on the grounds that he either (1) failed to file his claim within the applicable limitations period provided by the statute, or (2) did not, as required by the statute, exhaust the grievance procedure applicable to him.[2] On Mr. Beis-

---

2. The text of these statutes is as follows:

Sec. 2. A state or local governmental body may not suspend or terminate the employment of, or otherwise discriminate against, a public employee who reports a violation of law to an appropriate law enforcement authority if the employee report is made in good faith.

Sec. 3. (a) A public employee who alleges a violation of this Act may sue for injunctive relief, damages, or both. Except as provided by Subsection (d) of this section, an employee who seeks relief under this Act must sue not later than the 90th day after the day the alleged violation occurred or was discovered by the employee through the use of reasonable diligence....

(d) Before bringing an action under this section, an employee of a local governmental body must exhaust any applicable grievance or appeal procedures adopted by the employing local governmental body to resolve disputes concerning the suspension or termination of an employee's employment or an allegation of unlawful discrimination. Time used by the employee in following those procedures may not be included in the determination of the running of the limitations period established by Subsection (a) of this section. The employee must invoke the grievance or appeal procedure not later than the 90th day after the date the alleged violation occurred or was discovered by the employee through the use of reasonable diligence.

(e) If a final decision is not rendered within 30 days of initiation, the provisions of Subsection

er's intentional infliction of emotional distress claim, TRH requested summary judgment on the ground that termination of employment, as a matter of law, does not rise to the level of outrageousness required for such a claim.

The trial court granted TRH's motion for summary judgment, stating: "The Court finds there are no material issues of fact on Plaintiff's claims for retaliation under Tex. Rev.Civ.Stat.Ann. art. 6252–16a and for intentional infliction of emotional distress under Texas law."

Mr. Beiser brings one point of error with the following pertinent subparts:

The trial court erred in granting summary judgment on the basis that there was no genuine issue of material fact that [TRH] had violated article 6252–16a or intentionally inflicted emotional distress on John Beiser because:

A. As a matter of law, Mr. Beiser filed suit within the statutory limitations; ...

E. As a matter of law, TRH's conduct toward Mr. Beiser for his report of the safety violation can and does constitute extreme and outrageous conduct; ...

## Standard of Review

■ The party moving for summary judgment has the burden of proving (1) that there is no genuine issue as to any material fact, and (2) that he or she is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); see Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex.1985). When a defendant relies on an affirmative defense, its burden is to conclusively prove all elements of the affirmative defense. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 679 (Tex.1979). A defendant who moves for summary judgment on the basis of a deficiency in the plaintiff's ground of recovery has the burden of conclusively negating an element of the plaintiff's cause of action. See State v. $17,000, 809 S.W.2d 637, 640 (Tex.App.—Corpus Christi 1991, no writ).

(d) do not apply. Former Tex.Rev.Civ.Stat.Ann.

## Whistleblower Claim

In its motion for summary judgment on Mr. Beiser's whistleblower claim, TRH asserted that Mr. Beiser did not file his claim within the applicable statutory limitations period, either because he did not file it within the 90–day period provided for when there is no applicable grievance procedure, or because he did not, as required by statute, exhaust the grievance procedure applicable to him.

Viewing the summary judgment record in the light we must view it under MMP, Ltd., there were several possibilities concerning whether there was a grievance procedure applicable to Mr. Beiser upon his termination, and, if so, the nature of that grievance procedure. From the memo that TRH gave Mr. Beiser upon his termination, there is a reasonable inference that the post-termination grievance procedure was for Mr. Beiser to discuss his termination with Mr. Nealon, TRH's executive vice-president, who never returned the call Mr. Beiser made to him the day following his termination. Based on TRH's July 19, 1993 letter to Mr. Beiser's attorney and Mr. Beiser's July 23, 1993 letter to TRH, there is the possibility that the post-termination grievance procedure applicable to Mr. Beiser was the grievance procedure attached to TRH's July 19, 1993 letter. Based on Mr. Beiser's counsel's July 23, 1993 letter and TRH's counsel's July 28, 1993 letter, another reasonable inference is that there was no post-termination grievance procedure applicable to Mr. Beiser.

■ We hold under the whistleblower statute, when, as here, it is unclear whether the employer has a post-termination grievance procedure, or it is unclear what the procedure is and when, as here, the terminated employee, on or before the ninetieth day after the termination occurred, notifies the employer that he is invoking that employee's grievance procedure, informing that employer that it has 30 days in which to conclude the grievance procedure, that the terminated employee's claim is not barred by the statute's limitations provisions. See former art. 6252–16a, sections 3(a), (d), (e); see also art. 6252–16a.

House Comm. on Labor and Employment Relations, Bill Analysis, H.B. 1405, 71st Leg., R.S. (1989) ("The employee would be required to begin grievance procedures within 90 days after the alleged violation of the act. The grievance procedure and decision could take no longer than 30 days. The time used to follow grievance procedures would not be included in the 90–day deadline for filing a suit against an employer.").

Accordingly, we sustain appellant's point of error as it relates to his whistleblower claim.

## Emotional Distress Claim

■ The four elements of the tort of infliction of emotional distress are that: (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993).

In its motion for summary judgment, TRH asserted that Mr. Beiser's claim should be dismissed because, as a matter of law, Mr. Beiser could not establish that TRH's termination of Mr. Beiser constituted conduct that was extreme and outrageous.

■ Mr. Beiser argues that TRH's conduct was extreme and outrageous in that his termination violated the whistleblower statute.

This Court recently adopted the language of *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649 (5th Cir.1994), that even when the employer's conduct rises to the level of illegality, except in the most unusual cases, it is not the sort of conduct, deplorable as it may sometimes be, that constitutes extreme and outrageous conduct. *Sebesta v. Kent Elecs. Corp.*, 886 S.W.2d 459, 462–63 (Tex.App.— Houston [1st Dist.] 1994, writ denied, motion for rehearing pending) (termination of employee in violation of the Juror Reemployment Act in itself held not to be outrageous conduct as a matter of law) (citing *Prunty*, 16 F.3d at 654, (citing *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir.1991))). Under the authority of these cases, even if we accept as true, Mr. Beiser's allegations that TRH violated the whistleblower statute,

we hold that such a state of facts, as a matter of law, does not constitute extreme and outrageous conduct.

In addition to his termination itself, Mr. Beiser asserts the following conduct of TRH constituted extreme and outrageous conduct: (1) its collection of negative information about his job performance and incorporating that into a memorandum to him and (2) misleading him about TRH's grievance procedure.

■ In *Sebesta*, we held that the employer's arranging an exit parade of the terminated employee for the busiest part of the day, as a matter of law, did not constitute extreme and outrageous conduct. *Id.* at 464. Giving an employee a memorandum containing negative information about his job performance is not conduct that goes beyond all possible bounds of decency, such as to be utterly intolerable in a civilized community. *See id.* Accordingly, we hold that that conduct, as a matter of law, does not constitute conduct that is extreme and outrageous.

■ In *Sebesta*, we also held, as a matter of law, that the employer's telling the employee she could apply her vacation days to days she missed because of jury duty and then terminating her was not extreme and outrageous conduct. *Id.* Similarly, we hold that as a matter of law, TRH's offering to meet with Mr. Beiser to commence its grievance procedure the day after his limitations period would have run to file his whistleblower claim, without evidence of a knowing and intentional plan by TRH to mislead Mr. Beiser about its grievance procedure, does not constitute extreme and outrageous conduct.

We overrule Mr. Beiser's point of error as it relates to his claim for intentional infliction of emotional distress.

We affirm the portion of the trial court's judgment granting summary judgment on Mr. Beiser's claim for intentional infliction of emotional distress, reverse the portion of the judgment granting summary judgment on Mr. Beiser's whistleblower claim and remand the case.